**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RODNEY FORD, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | **VERIFIED DERIVATIVE AND** |
| | ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) | **JURY DEMAND** |
| DAVID J. D'ANTONI, JOSEPH M. GINGO, JANET PLAUT GIESSELMAN, MICHAEL J. MERRIMAN, JAMES A. MITAROTONDA, ANNE P. NOONAN, STEVEN W. PERCY, LARRY B. PORCELLATO, ALLAN R. ROTHWELL, and WILLIAM R. SEELBACH, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| – and – | ) ) | |
| OMNOVA SOLUTIONS INC., an Ohio Corporation, | ) ) ) | |
| Nominal Party. | ) ) ) | |

Plaintiff Rodney Ford ("Plaintiff"), by his undersigned counsel, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff, a holder of common stock of OMNOVA Solutions Inc. ("OMNOVA" or the "Company"), brings this action individually and derivatively against the Company and the

- 1 -

members of the Company's Board of Directors (the "Board"), for violations of sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and seeks relief for the defendants' breaches of fiduciary duty and other violations of state law arising out of the Board's agreement to sell the Company to Synthomer plc ("Synthomer") through its wholly owned subsidiaries, Spirit USA Holdings Inc. ("Merger Sub") and Synthomer USA LLC (the "Proposed Transaction").

2.      On July 3, 2019, OMNOVA issued a press release announcing entry into an Agreement and Plan of Merger dated July 3, 2019 (the "Merger Agreement") to sell OMNOVA to Synthomer, whereby Synthomer will purchase all of OMNOVA's outstanding common shares at a purchase price of $10.15 per share (the "Merger Consideration").  The Proposed Transaction has an enterprise value of approximately $824 million.

3.      The Proposed Transaction is the product of a flawed "process" that is designed to ensure the sale of OMNOVA to Synthomer, on terms preferential to defendants and other insiders and that will subvert the interests of Plaintiff and the other public shareholders of the Company. For example, certain OMNOVA directors and executive officers will potentially secure over $31.7 million collectively for the accelerated vesting of unvested equity awards and severance payments – not including substantial cash payments for their OMNOVA holdings – if the Proposed Transaction is consummated.

4.      Defendants have exacerbated their breaches of fiduciary duty by attempting to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  Specifically, pursuant to the Merger Agreement, defendants agreed to: (i) a "no-solicitation" provision that prevents the Company from soliciting other potential acquirers and negotiating with potential acquirers; (ii) an "information rights" provision that requires the Company to promptly advise Synthomer of any proposal or inquiries

received from other parties, including the material terms and conditions of the proposal and the identity of the party making the proposal; (iii) "matching rights" that allow Synthomer four (4) business days to match any superior offer, plus an additional two (2) business day period following a material amendment to the terms and conditions of a superior offer; and (iv) a provision requiring OMNOVA to pay a termination fee of $15,800,000 if the Company decides to pursue a competing offer.  The collective effect of these provisions is to chill any potential post-deal market check.

5.     OMNOVA filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the U.S. Securities and Exchange Commission ("SEC") on September 9, 2019.  The Proxy omits or misrepresents material information regarding the Proposed Transaction in violation of sections 14(a) and 20(a) of the Exchange Act and in contravention of the Individual Defendants' fiduciary duties under state law.  Specifically, as set forth below, the Proxy fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); (iii) the background process of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.  Accordingly, OMNOVA shareholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

6.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction until such time as defendants provide all material information critical for a fairly and fully informed shareholder vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Individual Defendants' violations of their fiduciary duties of care, loyalty, good faith, and independence.

- 3 -

7.     Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to OMNOVA's shareholders.

8.     Plaintiff alleges that he, along with all other public shareholders of OMNOVA common stock, are entitled to enjoin the Proposed Transaction or, alternatively, to recover damages in the event that the Proposed Transaction is consummated.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over all claims asserted herein pursuant to §27 of the Exchange Act because the claims asserted herein arise under sections 14(a) and 20(a) of the Exchange Act.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has jurisdiction over defendants because OMNOVA is incorporated and headquartered in Ohio and each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

12.     Plaintiff is, and was all times relevant hereto, a shareholder of OMNOVA.

13.     Nominal party OMNOVA, an Ohio corporation, is a global innovator of performance-enhancing chemistries and surfaces used in products for a variety of commercial, industrial and residential applications.  Its principal executive offices are located at 25435 Harvard

Road, Beachwood, Ohio 44122.  OMNOVA's common stock trades on the New York Stock Exchange under the ticker symbol "OMN."

14.     Defendant David J. D'Antoni ("D'Antoni") has been a director of the Company since 2003.

15.     Defendant Joseph M. Gingo ("Gingo") has been a director of the Company since 2015.

16.     Defendant Janet Plaut Giesselman ("Giesselman") has been a director of the Company since 2015.

17.     Defendant Michael J. Merriman ("Merriman") has been a director of the Company since 2008.

18.     Defendant James A. Mitarotonda ("Mitarotonda") has been a director of the Company since 2015.

19.     Defendant Anne P. Noonan ("Noonan") has served as the Company's President, Chief Executive Officer ("CEO") and as a director since December 2016.  Defendant Noonan previously served as President of the Company's Performance Chemicals business segment beginning in 2014.

20.     Defendant Steven W. Percy ("Percy") has been a director of the Company since 1999.

21.     Defendant Larry B. Porcellato ("Porcellato") has been a director of the Company since 2008.

22.     Defendant Allan R. Rothwell ("Rothwell") has been a director of the Company since 2010.

23.     Defendant William R. Seelbach ("Seelbach") has been Chairman of the Board since December 2016 and a director of the Company since 2002.

- 5 -

24.     Defendants D'Antoni, Gingo, Giesselman, Merriman, Mitarotonda, Noonan, Percy, Porcellato, Rothwell and Seelbach are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

25.     Synthomer is a public limited company incorporated under the laws of England and Wales with its corporate headquarters located at 45 Pall Mall, London, SW1Y 5JG, United Kingdom.  Synthomer is a global supplier of emulsion and specialty polymers, producing innovative formulations to support customers in a range of industries, from construction through paints and coatings to healthcare.

26.     Merger Sub is an Ohio corporation and a wholly owned subsidiary of Synthomer.

27.     Synthomer USA LLC is a Delaware limited liability company and a wholly owned subsidiary of Synthomer.

**CLASS ACTION ALLEGATIONS**

28.     Plaintiff brings this action individually and on behalf of all holders of the common stock of OMNOVA, and their successors in interest, who have been and will be harmed by the wrongful conduct of the defendants as alleged herein (the "Class").  The Class excludes defendants, and any person, firm, trust, corporation or other entity related to, affiliated with, or controlled by any of the defendants, as well as the immediate families of the Individual Defendants.

29.     This action is properly maintainable as a class action.

30.     The Class is so numerous that joinder of all members is impracticable.  As of September 6, 2019, the total number of issued and outstanding OMNOVA shares was 44,853,482. Members of the Class are scattered throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

31.     Questions of law and fact exist that are common to the Class and predominate over questions affecting any individual Class member, including, among others:

(a)     whether the Individual Defendants have fulfilled and are capable of fulfilling their fiduciary duties owed to Plaintiff and the Class, including, but not limited to, the duties of care, loyalty, good faith, and independence;

(b)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and other Class members;

(c)     whether Plaintiff and the other members of the Class will be irreparably damaged if defendants are not enjoined from continuing the conduct described herein, or alternatively, whether they have suffered compensable damages;

(d)     whether the Individual Defendants, in bad faith or for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(e)     whether the consideration payable to Plaintiff and the Class under the Proposed Transaction is unfair and inadequate.

32.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

33.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive

of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

34.     Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

**Company Background and its Bright Future**

35.     OMNOVA provides specialty solutions and performance materials for various commercial, industrial, and residential end uses in the United States, Europe, and Asia.  During fiscal 2018, OMNOVA operated in two business segments: Specialty Solutions and Performance Materials.  For fiscal 2018 OMNOVA derived 63% of its 2018 net sales from the Specialty Solutions segment and 37% from the Performance Materials segment.

36.     The Company's Specialty Solutions segment consists of three business lines: Specialty Coatings & Ingredients, Oil & Gas, and Laminates & Films.  The Specialty Solutions segment designs, develops, produces, and markets specialty products for use in various applications, such as architectural and industrial coatings; nonwovens used in hygiene products, filtration, and construction; drilling additives for oil and gas drilling, cementing, and fracking; elastomeric modification of plastic casings and hoses used in household, industrial products, and automobiles; tapes and adhesives; sports surfaces; textile finishes; commercial building refurbishment; new construction; residential cabinets; flooring; ceiling tiles; furnishings; manufactured housing; health care patient; common area furniture; and various industrial films applications.  This segment primarily sells its products directly to manufacturers.

37.     The Company's Performance Materials segment produces latexes, resins, binders, antioxidants, hollow plastic pigment, coated fabrics, and rubber reinforcing products for use in tire

cord, polymer stabilization, industrial rubber, carpet, paper, and various other applications.  This segment distributes its products primarily through a direct sales force and agents to manufacturers of retail store fixtures, cabinets, furniture, seating, health care components, and other products.

38.     While the Company has experienced less favorable financial results due to challenging economic conditions and volatile markets, its prospects for the future are strong.  On March 27, 2019, OMNOVA issued a press release announcing its financial results for the first quarter of 2019, its ninth consecutive quarter of year-over-year growth in Specialty Segment volume.  For the quarter, the Company reported that net sales for Specialty Solutions for the quarter increased $3.5 million, or 3.2%, to $112.7 million, compared with $109.2 million year over year.  Commenting on these results, defendant Noonan remarked:

> We remain confident that our specialization strategy will continue to drive long-term shareholder value.  Despite widespread market and industry uncertainty, we recorded our ninth consecutive quarter of volume growth year-over-year in Specialty Solutions.  We are pleased with our September 2018 OMNOVA Portugal acquisition, which contributed nicely to specialty coatings volumes and profitability in the quarter.  The integration of our OMNOVA Portugal acquisition is continuing as expected with above-plan performance so far this year.  Additionally, we saw continued strength in demand for our adhesives & sealants products, where our new proprietary innovation for caulk applications continues to be valued by the market. Our nonwovens business benefited from new wins in non-hygiene applications.
>
> Our strategic plan to improve margins in the Performance Materials segment remains on track, with progress in several areas during the quarter.  The coated fabrics business began shipments of new, high-margin products to a new transportation customer, which should begin to benefit margins during the second quarter. In the tire cord business, we saw margins begin to expand.  Additionally, the previously announced closure of our Green Bay, Wisconsin facility remains on track.  This action will contribute approximately $7-8 million to operating profit on an annualized basis, primarily benefiting the Performance Materials segment, starting in the third quarter of 2019.
>
> We are optimistic as we head into the second quarter.  In Oil & Gas, we have closed on a significant new business opportunity, and have added additional shifts in two plants to support the record order book.  We expect to continue benefiting from new customer wins in nonwovens and the strength of our innovative products in adhesives & sealants.  In coatings, our March order book rebounded significantly from the first quarter.  Customers are beginning to show signs of confidence

heading into the coatings season, but we continue to watch for signs of coatings market volatility.  If these positive trends continue, we are optimistic that we can deliver Adjusted Diluted Earnings per Share for 2019 that is higher than 2018's result,

39.     On July 3, 2019, OMNOVA reported its financial results for the second quarter of 2019.  For the quarter, net sales were $205.7 million, compared to second quarter 2018 net sales of $205.6 million.  Net sales for Specialty Solutions for the quarter increased $13.5 million, or 10.5%, to $142.3 million, compared with $128.8 million year over year.  Commenting on the financial results, defendant Noonan stated:

> As anticipated, we continued to face challenging economic conditions and volatile markets during the quarter.  In spite of this market uncertainty, our specialization strategy made continued progress.  We reported our 10th consecutive quarter of year-over-year volume growth in Specialty Solutions driven by Specialty Coatings, Adhesives & Sealants and Oil & Gas.  Our Portuguese acquisition continued to perform ahead of expectations.  In Performance Materials, our coated fabrics business doubled its contribution to profitability as it shipped new, higher-margin products.
>
> We have continued optimism as we head into the second half of the year.  We completed the closure and sale of our Green Bay, Wisconsin plant in May and are on track to deliver $7-8 million of annual savings beginning in June.  During the second quarter, we increased production capability in Mogadore and Akron, Ohio and have improved our ability to supply record levels of orders in Oil & Gas.  We expect OMNOVA Portugal to continue to exceed integration and synergy targets.  We also expect continued benefit from our new product development pipeline as margins for these innovative new products are 400 basis points favorable to last year.  I am extremely pleased with the progress we have made and welcome the opportunity to leverage OMNOVA's successes to accelerate the combined company's growth potential . . . .

40.     Notably, prior to the announcement of the Proposed Transaction, multiple analysts set price targets for the Company above the Merger Consideration.  For example, as recently as June 26, 2019, Sidoti & Company LLC set a $12.00 per share price target for the Company - $2.00 above the Merger Consideration.  Moreover, on April 2, 2019, CJS Securities set a $13.00 per share price target for the Company.

**The Flawed Sale Process**

41.     In October 2017, Synthomer's CEO Calum MacLean ("MacLean") contacted defendant Noonan and expressed an interest in submitting a proposal to acquire OMNOVA. Synthomer proposed to acquire the Company in an all-stock transaction, resulting in OMNOVA shareholders owning approximately 18% of the combined company, or in an all-cash deal at a small premium.   Following review of the Company's financial advisor Morgan Stanley's preliminary analyses, OMNOVA rejected the proposal.

42.     On September 17, 2018, MacLean again expressed an interest in submitting a proposal to acquire OMNOVA.   Thereafter, Synthomer submitted a proposal to acquire OMNOVA for $11.90 per share in cash.  In October and November 2018, the Company received additional unsolicited indications of interest from three parties, referred to in the Proxy as "Party A," "Party B," and "Party C."  The proposals from Parties A, B, and C, contained all-cash offers to acquire the Company for $13.00 per share, $10.00 - $10.50 per share, and $10.25 per share, respectively.  Following discussion, the Board rejected each of the offers as inadequate.

43.     On December 6, 2018, the Board met and, following detailed review and discussion, adopted management's proposed 2019 strategic plan for OMNOVA.

44.     In February 2019, Synthomer and Party C reiterated their offer prices.  On February 13, 2019, Party B submitted a letter increasing its offer price to $11.00 - $11.25 per share.

45.     At a February 26, 2019 Board meeting, the Board determined to invite Synthomer, Party A, Party B, and an additional financial sponsor referred to in the Proxy as "Party D," to participate in a selective competitive process.  The Board determined to inform Party C that the Company was considering a selective competitive process from which Party C would be excluded unless it enhanced its proposal.  Thereafter, Morgan Stanley contacted each of the parties.  On March 27, 2019, Party C submitted a revised $12.00 per share proposal and was invited to participate in the process.

46.     Between March 20, 2019 and April 10, 2019, OMNOVA's legal counsel negotiated and finalized the terms of non-disclosure agreements with each of Synthomer, Party A, Party B, Party C and Party D.  OMNOVA subsequently entered into non-disclosure agreements with potential financing sources of Party C.

47.     On April 4, 2019, a financial sponsor referred to in the Proxy as "Party E" contacted defendant Noonan regarding a potential financial investment to assist OMNOVA in pursuing an acquisition.  Party E was later invited into the process and negotiated the terms of a non-disclosure agreement with OMNOVA's counsel.

48.     Morgan Stanley distributed process letters setting an April 29, 2019 deadline for parties to submit first round proposals.  Parties D and E informed Morgan Stanley they did not intend to submit proposals.  On April 29, 2019, Morgan Stanley received nonbinding proposals from Synthomer ($11.90 per share in cash), Party A ($11.00 - $11.50 per share in cash) and Party C ($12.00 per share in cash).  On April 30, 2019, Party B submitted a verbal proposal of $9.00 - $9.50 per share in cash.

49.     Following receipt of these indications of interest, at a May 2, 2019 Board meeting, the Board reviewed an update to the projections contained in OMNOVA's 2019 strategic plan, and adopted the updated projections.  The Board also determined to invite Synthomer, Party A and Party C to the second stage of the process.

50.     Between late May and early June 2019, Parties A and C removed themselves from the process.

51.     On June 17, 2019, the Board met and, following a presentation by management, adopted a further update to the projections contained in OMNOVA's 2019 strategic plan.

52.     On June 20, 2019, Synthomer submitted an updated written proposal to acquire the Company for $10.00 per share in cash, which Synthomer subsequently increased to $10.15 per

share.  Thereafter, the parties negotiated the remaining outstanding terms of the deal, including "certain employee compensation and benefits matters applicable to the OMNOVA workforce generally."  Proxy at 43.

53.     On July 2, 2019, the Board met, Morgan Stanley issued its fairness opinion and the Board approved the Proposed Transaction.  The next day, OMNOVA and Synthomer executed the Merger Agreement.

**The Proposed Transaction**

54.     On July 3, 2019, OMNOVA issued a press release announcing the Proposed Transaction.  The press release stated, in pertinent part:

> BEACHWOOD, Ohio, July 3, 2019 -- OMNOVA Solutions Inc. (NYSE: OMN) today announced that it has entered into a definitive agreement to be acquired by Synthomer plc, a United Kingdom-based specialty chemical company, for $10.15 per share in cash.  The Company also reported its second quarter fiscal 2019 earnings, which included the 10th consecutive quarter of year-over-year volume growth in its Specialty Solutions segment.
>
> OMNOVA Chief Executive Officer Anne Noonan said, "Today, we announced that we have entered into a definitive agreement under which Synthomer plc (LON: SYNT) will acquire all of the outstanding common shares of OMNOVA Solutions for $10.15 per share in an all-cash transaction.  The offer price represents a premium of 52% over OMNOVA's three-month weighted average share price of $6.67.  The transaction has been approved unanimously by the OMNOVA and Synthomer boards of directors.  We are pleased that Synthomer recognizes the hard work of our employees in executing our multi-year transformation into a leading global specialty solutions provider.  OMNOVA complements Synthomer culturally, geographically and by market, while Synthomer's financial position provides for a very strong combined company that will be well positioned to accelerate growth. This transaction presents increased opportunities for the business and its employees to leverage the combined scale, grow more quickly and profitably, and enhance product innovation in ways that will benefit customers and employees," finished Noonan.
>
> Completion of the transaction is subject to the satisfaction of certain customary closing conditions, including the receipt of regulatory approvals, and approval from Synthomer's and OMNOVA's shareholders.  The transaction is not contingent on obtaining financing and is expected to close in late 2019 or early 2020.
>
> Advisors

Morgan Stanley & Co. LLC is acting as exclusive financial advisor to OMNOVA Solutions and Jones Day is acting as its legal counsel.

**The Individual Defendants' Self-Interest in the Proposed Transaction**

55.     In light of its bright future and despite recent headwinds, OMNOVA was in a position to reject Synthomer's offer, which does not adequately reflect the Company's inherent value and choose to continue as an independent standalone company, as the directors' fiduciary duties demand.  The Board failed to do so.

56.     Defendants' motive for entering into the flawed transaction is clear.  They are motivated to secure change-in-control benefits that are only available to them if the Company is acquired.  These motives provided defendants with the incentive to push forward with the Proposed Transaction instead of exploring the Company's standalone options.

57.     Certain defendants and members of Company management stand to reap substantial financial benefits from the accelerated vesting of certain equity awards.  The following table illustrates the value of the equity awards the Company's directors and executive officers stand to receive upon consummation of the Proposed Transaction:

| Non-Employee Director | Number of Unvested Restricted Share Units (#) | Value of Unvested Restricted Share Units ($) [1] | Number of "Phantom" Shares (#) [2] | Value of "Phantom" Shares ($) [3] |
|---|---|---|---|---|
| David J. D'Antoni | 100,451 | 1,019,578 | 112,290 | 1,139,741 |
| Janet Plaut Giesselman | 51,394 | 521,649 | — | — |
| Joseph M. Gingo | 51,394 | 521,649 | — | — |
| Michael J. Merriman | 98,237 | 997,106 | — | — |
| James A. Mitarotonda | 51,394 | 521,649 | 6,137 | 62,295 |
| Steven W. Percy | 100,451 | 1,019,578 | 69,575 | 706,187 |
| Larry B. Porcellato | 96,220 | 976,633 | — | — |
| Allan R. Rothwell | 85,645 | 869,297 | 47,819 | 485,363 |
| William R. Seelbach | 100,451 | 1,019,578 | 7,869 | 79,865 |
| Robert A. Stefanko [4] | — | | | |

| Executive Officer | Number of Unvested Restricted Share Units (#) | Value of Unvested Restricted Share Units ($) [1] | Number of Unvested Performance Shares (#) [2] | Value of Unvested Performance Shares ($) [3] |
|---|---|---|---|---|
| Anne P. Noonan | 177,400 | 1,800,610 | 310,400 | 3,150,560 |
| Paul F. DeSantis | 56,300 | 571,445 | 82,100 | 833,315 |
| James C. LeMay | [4] | [4] | 63,100 | 640,465 |
| Marshall D. Moore | 36,300 | 368,445 | 51,800 | 525,770 |
| Michael A. Quinn | 35,000 | 355,250 | 49,900 | 506,485 |
| Jay T. Austin [5] | — | — | 16,200 | 164,430 |

58.     Moreover, certain named executive officers will receive significant severance benefits in connection with the Proposed Transaction.  Defendant Noonan *alone* stands to receive an estimated potential payout of over $11 million.  The following table sets forth the severance compensation certain named executive officers are entitled to receive upon consummation of the Proposed Transaction:

| Named Executive Officer | Cash ($) [1] | Equity ($) [2] | Perquisites/ Benefits ($) [3] | Tax Reimbursement ($) [4] | Total ($) |
|---|---|---|---|---|---|
| Anne P. Noonan | 6,000,000 | 4,951,170 | 62,771 | — | 11,013,941 |
| Paul F. DeSantis | 1,968,000 | 1,404,760 | 73,176 | — | 3,445,936 |
| James C. LeMay | 2,593,800 | 640,465 | 150,864 | 1,471,500[2] | 4,856,629 |
| Marshall D. Moore | 1,414,500 | 894,215 | 59,503 | — | 2,368,218 |
| Michael A. Quinn | 1,291,500 | 861,735 | 73,176 | — | 2,226,411 |

**The Unfair Deal Protection Devices**

54.     In addition to concerns regarding the inadequate Merger Consideration and the Board's self-interest, the Merger Agreement features several provisions that work to preclude other bidders from stepping forward with a superior alternative offer.  At best, these provisions place shareholders in an unfortunate position and, at worst, question the impartiality of the Board in the negotiation process.

55.     The Individual Defendants have agreed to the following unreasonable deal protection devices:

> a.   A "no-solicitation" clause that prevents OMNOVA from soliciting, or its directors and officers from even participating in discussions which may lead to a superior proposal from any bidder (Merger Agreement, Section 5.2(a));

b. An "information rights" provision that requires the Company to promptly advise Synthomer of any proposal or inquiries received from other parties, including the material terms and conditions of the proposal and the identity of the party making the proposal (Merger Agreement, Section 5.2(c));

c. A "matching rights" provision that allows Synthomer four (4) business days to re-negotiate with the Board after it is provided with written notice of the Board's intention to make a change of recommendation, plus an additional two (2) business days following a material amendment to the terms and conditions of a superior offer (Merger Agreement, Section 5.2(d)); and

d. A termination fee of $15,800,000 payable by the Company to Synthomer if OMNOVA decides to pursue a competing bid (Merger Agreement, Section 8.02).

56.     The "no-solicitation" clause, the "information rights" provision, the "matching rights" provision, and the termination fee unfairly restrain the Individual Defendants' ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to a third party's written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

57.     The reason behind these deal protection devices is clear: the absence of a meaningful premium for shareholders creates the very real potential that a third party bidder will attempt to usurp Synthomer and submit a higher bid for OMNOVA.

58.     Taken as a whole, the foregoing deal protection devices essentially foreclose the possibility that a third-party "white knight" could step forward to provide OMNOVA shareholders

with a premium for their shares, instead of the inadequate compensation offered by the Proposed Transaction.

59. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of OMNOVA's assets and business and will be prevented from obtaining the intrinsic value of their equity ownership of the Company.

60. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

61. Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law.

**The Proxy Contains Material Misstatements and Omissions**

62. The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to OMNOVA's shareholders. The Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

63. Specifically, as set forth below, the Proxy fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; (iii) the background process of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. Accordingly, OMNOVA shareholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

**Material Omissions Concerning OMNOVA's Financial Projections**

64.     The Proxy is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

65.     Specifically, on December 6, 2018, the Board met and Company management presented to the Board its proposed 2019 strategic plan for OMNOVA and, after detailed review and discussion, the Board adopted the 2019 strategic plan ("2019 Strategic Plan"). *Id*. at 35, 49.

66.     Thereafter, on May 2, 2019, the Board met and Company management presented an update to the projections contained in OMNOVA's 2019 Strategic Plan reflecting OMNOVA's actual results of operations in the first fiscal quarter, changes in the performance and operational mix of OMNOVA's business units in that period and the impact of those changes to operational mix on subsequent periods, business trends and economic conditions in the markets in which OMNOVA operates, and the impact of the foregoing on future growth rates. After detailed review and discussion, the Board adopted the updated projections ("May Update"). *Id.* at 49.

67.     Then, on June 17, 2019, the Board met and Company management presented an update to the projections contained in the May Update, reflecting OMNOVA's actual results of operations in the first fiscal half of 2019, changes in the performance and operational mix of OMNOVA's business units in that period and the impact of those changes to operational mix on subsequent periods, and business trends and economic conditions in the markets in which OMNOVA operates, and the impact of the foregoing on future growth rates. After detailed review and discussion, the Board adopted the updated projections ("Company Projections"). *Id.*

68.     Critically, the Proxy fails to disclose the unlevered free cash flow ("UFCF") figures for the 2019 Strategic Plan and May Update.

69.     Without this omitted material information, OMNOVA shareholders are in the dark as to whether the Company Projections were artificially revised downward after the initial bids

had been received by the Company and in order to fit the Merger Consideration into a range of fairness in Morgan Stanley's financial analyses.

70.    As one highly-respected law professor explained, the forecasted free cash flows of a company is one of the three central components of a discounted cash flow analysis, "which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  As Professor Davidoff explains.

> [A] discounted cash flow analysis is conducted by discounting back at a chosen discount rate the projected future free cash flows and terminal value of an asset. In performing this analysis there are three central choices, which must be made, each of which can significantly affect the final valuation. *These are the correct forecasted free cash flows to utilize*, the appropriate discount rate, and the *terminal value* of the asset. *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value...This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.

*Id.* at 1576-1577 (emphasis added).

71.    The omission of this information renders the statements in the "Certain OMNOVA Unaudited Prospective Financial Information" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Morgan Stanley's Financial Analyses**

72.    The Proxy describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, OMNOVA's public shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the

Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to OMNOVA's shareholders.

73.     With respect to Morgan Stanley' *Discounted Cash Flow Analysis* ("DCF"), the Proxy fails to disclose: (i) the implied terminal multiples resulting from the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 12.6% to 14.6%; and (iii) the number of diluted Company shares outstanding.

74.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

75.     The omission of this information renders the statements in the "Opinion of Morgan Stanley & Co. LLC" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning the Background Process of the Proposed Transaction**

76.     The Proxy omits material information relating to the background of the Proposed Transaction.

77.     In connection with the sale process, OMNOVA executed non-disclosure agreements that contained standstill provisions, but did not contain any restriction on the applicable counterparty from requesting that the Board waive such standstill provisions.  The Proxy fails, however, to disclose whether any of the counterparties who executed non-disclosure agreements with OMNOVA requested that the Board waive such standstill provisions, and if so, whether the Board agreed to waive the standstill provisions to allow these counterparties to make a topping bid for the Company.

78.     The disclosure of this information is crucial to OMNOVA shareholders being fully informed of whether their fiduciaries have continued to keep in place restrictive devices to foreclose a topping bid for the Company.

79.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

80.     The Proxy fails to disclose material information concerning the conflicts of interest faced by OMNOVA insiders.

81.     The Proxy fails to disclose whether any members of OMNOVA management are continuing with the combined company, and the details of any employment and retention-related discussions and negotiations that occurred between Synthomer and OMNOVA's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy further fails to disclose whether any of Synthomer's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

82.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

83.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers of OMNOVA in the Merger" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act

84.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the shareholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

85.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of OMNOVA and owe them unwavering duties of care, loyalty, good faith, and independence.

64.     In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to secure a fair value for shareholders and disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d)     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)  violates their fiduciary duties or compromises their loyalty, including by putting their interests before the interests of OMNOVA's shareholders.

65.  The Individual Defendants, separately and together, in connection with the Proposed Transaction, violated their duties owed to Plaintiff and the other public shareholders of OMNOVA to secure a fair value for shareholders in a sale of the Company. As a result of the Individual Defendants' divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their OMNOVA common stock in the Proposed Transaction.

66.  Because the Individual Defendants are knowingly or recklessly breaching their duties of care, loyalty, good faith, and independence in connection with the Proposed Transaction, the burden of proving the inherent or entire fairness of the Proposed Transaction, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

67.  Plaintiff also brings this action derivatively in the right and for the benefit of OMNOVA to redress injuries suffered, and to be suffered, by the Company as a direct result of the violations of state law by defendants, including breaches of fiduciary duty and the violations of federal law by the defendants.

68.  Plaintiff will adequately and fairly represent the interests of OMNOVA and its shareholders in enforcing and prosecuting its rights.

69.  Plaintiff has not made demand on the Board to file suit for the violations of state and federal law alleged herein because such a demand was a futile and useless act, particularly for the following reasons:

(a)  All of the directors on the Board are named as wrongdoers and defendants in this lawsuit;

(b)      All of the directors on the Board are alleged to have committed violations of federal and state law for which they are accountable to the Company and to the Company's shareholders;

(c)      Each of the key officers and directors knew of and/or directly benefitted from the wrongdoing complained of herein, including over $31.7 million in severance payments and the monetization of the defendants' unvested equity awards only if the Proposed Transaction is consummated;

(d)      Each defendant approved the unfair Proposed Transaction at issue in this matter;

(e)      Each defendant was in possession of non-public information regarding the Proposed Transaction and the material omissions and misleading disclosures at issue in this litigation;

(f)      Each defendant reviewed the Proxy before it was disseminated:

(g)      Each defendant was responsible for the disclosures and omissions in the Proxy;

(h)      Each defendant recommended that the Company's shareholders vote in favor of the unfair Proposed Transaction in the Proxy;

(i)      Each defendant ordered the dissemination of the Proxy to the Company's shareholders;

(j)      Each defendant is violating the individual rights of the Company's shareholders to make a fully informed vote on the Proposed Transaction by disseminating a flawed Proxy;

(k)     In order to bring this suit, all of the directors of OMNOVA would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(l)     The acts complained of constitute violations of the fiduciary duties owed by OMNOVA officers and directors and these acts are incapable of ratification;

(m)     Any suit by the directors of OMNOVA to remedy these wrongs would likely expose the Individual Defendants and OMNOVA to further civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(n)     Each member of the Board is, directly or indirectly, the recipient of remuneration paid by the Company, including benefits, stock options and other emoluments by virtue of their Board membership and control over the Company, the continuation of which is dependent upon their cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein and are therefore incapable of exercising independent objective judgment in deciding whether to bring this action; and

(o)     Because of their association as directors of the Company and their positions as present or former employees, the directors are dominated and controlled so as not to be capable of exercising independent objective judgment.

70.     Plaintiff has not made any demand on OMNOVA shareholders to institute this action since such demand would be futile and useless action for the following reasons:

(a)     OMNOVA is a publicly traded company with over 44.8 million shares outstanding and thousands of shareholders;

(b)      Making demand on such a number of shareholders would be impossible for Plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)      Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### On Behalf of Plaintiff for Violations of §14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants

71.      Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

72.      Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

73.      Individually and in concert, the Individual Defendants and OMNOVA disseminated the false and misleading Proxy specified above, which contained statements that, in violation of §14(a) and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary in order to make the statements therein not materially false or misleading.

74.      The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy.

88.      The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

89.      The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as

significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

90.     By reason of the foregoing, the Company and the Individual Defendants have violated §14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

91.     Because of the false and misleading statements in the Proxy, Plaintiff and other OMNOVA shareholders are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### On Behalf of Plaintiff for Violations of §20(a) of the Exchange Act
### Against the Individual Defendants

92.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

93.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of OMNOVA within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of OMNOVA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

95.     Each of the Individual Defendants as controlling persons of OMNOVA was provided with or had unlimited access to copies of the Proxy and other statements alleged by

Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

96.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy.

97.     By virtue of the foregoing, the Individual Defendants have violated §20(a) of the Exchange Act.

98.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are jointly and severally liable to Plaintiff pursuant to §20(a) of the Exchange Act. Plaintiff has no adequate remedy at law.


**COUNT III**

**Class Claim for Breach of Fiduciary Duties Against the Individual Defendants**

92.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

93.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in OMNOVA.

94.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have violated their fiduciary duties by contractually preventing themselves from

obtaining higher offers from other interested buyers and attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in OMNOVA.

95.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the Class.

96.     As demonstrated by the allegations above, the Individual Defendants have breached their duties of care, loyalty, good faith, and independence owed to the public shareholders of OMNOVA because, among other reasons, they have failed to take steps to ensure the Merger Consideration reflects the fair value of OMNOVA to its public shareholders and/or are attempting to improperly put their personal interests ahead of the interests of OMNOVA shareholders.

97.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they will not receive their fair portion of the value of OMNOVA's assets and businesses and will be prevented from obtaining fair value for their investment.

98.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

99.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

**COUNT IV**

**Derivative Claim for Breach of Fiduciary Duties Against the Individual Defendants**

100.     Plaintiff repeats all previous allegations as if set forth in full herein.

101.     Plaintiff brings this claim derivatively on behalf of OMNOVA.

102.     The Individual Defendants owed the Company certain fiduciary duties as fully set out herein.

103.     By committing the acts alleged herein, the Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the Company and public shareholders of OMNOVA and have acted to put their personal interests ahead of the interests of the Company and OMNOVA's shareholders.

104.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive the Company, Plaintiff and other members of the Class of the true value inherent in and arising from OMNOVA.

105.     The Individual Defendants have violated their fiduciary duties by entering OMNOVA into the Merger Agreement without regard to the effect of the Proposed Transaction on the Company and its shareholders.

106.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward the Company, Plaintiff and the other members of the Class.

107.     As a result of the Individual Defendants' unlawful actions, the Company, Plaintiff and the other members of the Class will be irreparably harmed in that they will be deprived of the fair value of OMNOVA's assets and operations.  Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to the Company, Plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms and may consummate the Proposed Transaction, all to the irreparable harm of the Company, Plaintiff and members of the Class.

108.    The Company, Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can the Company, Plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

**COUNT V**

**Derivative Claim for Violations of §14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants**

92.    Plaintiff repeats all previous allegations as if set forth in full herein.

93.    Plaintiff brings this claim derivatively on behalf of OMNOVA.

94.    Individually and in concert, the Individual Defendants and OMNOVA disseminated the false and misleading Proxy specified above, which contained statements that, in violation of §14(a) and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary in order to make the statements therein not materially false or misleading.

95.    The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy.

96.    The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

97.    The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

98.    By reason of the foregoing, the Individual Defendants have violated §14(a) of the

Exchange Act and Rule 14a-9 promulgated thereunder.

99.     Because of the false and misleading statements in the Proxy, the Company is threatened with irreparable harm and with the interference of proper governance on its behalf that follows the free and informed exercise of the shareholders' right to make an informed vote regarding a corporate merger.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Declaring this action to be properly maintainable as a class and derivative action;

B.     Declaring that the Merger Agreement was entered into in breach of the Individual Defendants' fiduciary duties and is therefore unlawful and unenforceable;

C.     Declaring that defendants herein, and each of them, have violated §§14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

D.     Preliminarily and permanently enjoining defendants and all those acting in concert with them from consummating the Proposed Transaction until the Company and the Individual Defendants disclose all material information regarding the Proposed Transaction;

E.     Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of OMNOVA's shareholders until the process for the sale or auction of the Company is completed and the highest possible value is obtained;

F.     In the event that the Proposed Transaction is consummated, rescinding it or awarding actual and punitive damages to Plaintiff and the Class;

G.     Implementation of a constructive trust, in favor of Plaintiff, upon any benefits improperly received by defendants as a result of their wrongful conduct;

H.     Awarding Plaintiff fees and expenses in connection with this litigation, including

reasonable attorneys' and experts' fees and expenses; and

I.     Granting such other and further relief as the Court deems just and proper.


DATED: September 17, 2019

                            /s John C. Camillus
                            John C. Camillus           (0077435)
                            Law Office of John C. Camillus, LLC
                            P.O. Box 141410
                            Columbus, Ohio  43214
                            (614) 992-1000
                            (614) 559-6731 (Facsimile)
OF COUNSEL:                    jcamillus@camilluslaw.com

WEISSLAW LLP                   *Counsel for Plaintiff*
Richard A. Acocelli (pro hac vice forthcoming)
1500 Broadway, 16th Floor
New York, New York 10036
Tel.:  (212) 682-3025
Fax:  (212) 682-3010
racocelli@weisslawllp.com

*Counsel for Plaintiff*

- 33 -